**FILED**
**FEBRUARY 22, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**08 C 1119**

| | | |
|---|---|---|
| CLAUDE A. REESE, | ) | |
| | ) | |
| Plaintiff, | ) No. | |
| | ) | |
| vs. | ) COMPLAINT FOR BREACH OF | **JUDGE GRADY** |
| | ) FIDUCIARY DUTY | **MAGISTRATE JUDGE KEYS** |
| CHRISTOPHER M. O'MEARA, | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | |

Plaintiff Claude A. Reese, by his undersigned counsel, complaining of defendant, alleges upon information and belief, as follows:

### I.    JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa and 28 U.S.C. § 1331. The claims asserted herein arise under section 10(b) and 20(a) of the Exchange Act as amended, 15 U.S.C. § 78b(b) and § 78t(a), rule 10b-5, 17 C.F.R. § 240, 10b-5, promulgated thereunder.

2. Venue is proper in this district pursuant to section 27 of the Exchange Act, and is proper pursuant to 28 U.S.C. § 1391 because, among other things, the conduct complained of herein affected persons in this district.

3. In connection with the acts, conduct, and other wrongs alleged in this complaint, the defendant, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mail and telephone communications.

## II.     THE PARTIES

4.     Plaintiff purchased the Lehman Brothers Holdings, Inc. stock during the Class Period, as reflected in the attached certification, and was damaged as a result of the market learning the truth about defendant's misconduct.

5.     Defendant Christopher M. O'Meara ("O'Meara") since December 2004 and at all times relevant hereto, served as the Company's Chief Financial Officer. In September 2007 O'Meara was named Global Head of Risk Management of Lehman Brothers.

6.     Because of defendant's positions with the Company, he had access to adverse undisclosed information about the Company's business, operations, operational trends, financial statements and markets via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management meetings and committees thereof and via reports and other information provided to him in connection therewith.

7.     Defendant, by virtue of his high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Defendant was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, was aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

8. As an officer and controlling person of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, defendant had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management and earnings, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common stock would be based upon truthful and accurate information. Defendant's misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

9. Defendant participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and was aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and was aware of their materially false and misleading nature. Because of defendant's executive and managerial positions with Lehman Brothers, he had access to the adverse undisclosed information about Lehman Brothers' financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Lehman Brothers and its business issued or adopted by the Company materially false and misleading.

10. Defendant, because of his positions of control and authority as an officer of the Company, was able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Defendant was provided with

copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, defendant is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

11. Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Lehman Brothers common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Lehman Brothers common stock; and (ii) caused plaintiff and other members of the Class to purchase Lehman Brothers common stock at artificially inflated prices.

### III.   FACTS

12. This is a class action on behalf of all persons who purchased Lehman Brothers securities during the period September 13, 2006 through July 30, 2007 (the "Class Period"). As a direct result of the market learning of defendant's misrepresentations and omissions, the price of Lehman Brothers shares declined and plaintiff and the class suffered a loss on their investments in Lehman Brothers.

13. Lehman Brothers is a public company incorporated in Delaware. Lehman Brothers, through its subsidiaries, provides various financial services to corporations, governments and municipalities, institutions, and high-net-worth individuals worldwide. The Company operates in three segments: Capital Markets, Investment Banking, and Investment Management.

14. The Fixed Income division of the Capital Market segment includes Lehman Brothers' mortgage and loan origination and mortgage- and asset-backed securities businesses. Lehman

Brother' most recent 10-K describes the Company as a "leading underwriter of and market maker in residential and commercial mortgage- and asset-backed securities."

15. During the Class Period, Lehman Brothers was an active participant and heavily invested in the mortgage-backed securities markets.

**False and Misleading Statement and Omissions During the Class Period**

16. On September 13, 2006, the first day of the Class Period, Lehman Brothers announced its earnings for the quarter ending August 31, 2006. Nowhere within the announcement or in the Company's subsequently filed 10-Q did Lehman Brothers quantify the true extent of its exposure to losses incurred from trading in sub-prime backed mortgage derivatives, "collateralized debt obligations" (CDOs) or mortgage backed security originations for which it was responsible.

17. On December 14, 2006, Lehman Brothers announced its earnings for the quarter ending November 30, 2006. Nowhere within the announcement or in the Company's subsequently filed 10-K did Lehman Brothers quantify the true extent of its exposure to losses incurred from trading in sub-prime mortgage derivatives, CDOs or mortgage backed security originations for which it was responsible.

18. On March 14, 2007, Lehman Brothers announced its earnings for the quarter ending February 28, 2007. Nowhere within the announcement or in the Company's subsequently filed 10-Q did Lehman Brothers quantify the true extent of its exposure to losses incurred from trading in sub-prime backed mortgage derivatives, CDOs or mortgage backed security originations for which it was responsible.

19. On June 12, 2007, Lehman Brothers announced its earnings for the quarter ending May 31, 2006. Nowhere within the announcement or in the Company's subsequently filed 10-Q did

Lehman Brothers quantify the true extent of its exposure to losses incurred from trading in sub-prime mortgage backed derivatives, CDOs or sub-prime mortgage backed security originations for which it was responsible.

20. The extent of Lehman Brothers' exposure to sub-prime mortgage related losses was particularly easy for the Company to manipulate. As explained in a June 20, 2007 *Wall Street Journal* article, mortgage-backed securities are notoriously difficult to value:

> Markets for exotic investments like derivatives linked to subprime mortgages have exploded in recent years, but its often hard to attach an accurate value to those assets. ... Unlike stocks and Treasury bonds, whose prices are continually quoted and easily obtained, many of these derivative instruments trade infrequently and don't have clear market prices. To come up with market values for these investments – a process known as "marking" their positions to market – investment funds often rely on their own valuation models.

Further complicating the valuation of mortgage backed securities, as the article explained, is the fact that "changes in the mortgage market, for example, can be glacial – the default and recovery process in the housing market takes months to sort out – meaning that the impact can take time before it is felt in a CDO."

21. Mortgage backed securities are particularly susceptible to abuse because their value can be easily misrepresented. As noted by the *Financial Times,* in an article published June 26, 2007, "[t]hese products are generally evaluated using models rather than actual sales, opening the door to possible manipulation."

**Disclosures at the End of the Class Period**

22. By July 17, 2007, news of further deterioration in the mortgage-backed securities market and rumors concerning Lehman Brothers' mortgage related losses reached a critical stage. That day, Bear Stearns, a competing investment bank, announced that its "Structured Enhanced

Leverage Fund," due to heavy losses in its mortgage-related investments, would be returning no money to its investors, and that a second failed mortgage securities-based hedge fund would be able to return only a small portion of its clients' funds.

23. This news sent shockwaves through the market, and led investors to suspect that Lehman Brothers was also concealing mortgage related losses on its balance sheet. On July 18, 2007, this speculation forced Lehman Brothers to reassure the market: a Company spokeswoman, Kerrie Cohen, said "[t]he rumors related to subprime [mortgage] exposure are unfounded."

24. Despite the Company's assurances, on July 30, 2007 an article published by *MarketWatch* noted on that day that Standard & Poor's Equity Group downgraded Lehman Brothers, to hold from buy, "citing the brokerage's exposure to leverage in its fixed-income business, widening credit spreads and slower mortgage origination and securitization volume for mortgages."

25. This news shocked the market, causing Lehman Brothers' share price to drop over the next four trading days, to close on August 3, 2007, at $55.78 per share, a 14.56 percent drop from its closing price before the news of the Standard & Poor's downgrade.

**Post-Disclosure Events**

26. It was not until January 29, 2008, when Lehman Brothers filed its 10-K for fiscal 2007 that the market's fears concerning the Company's mortgage-related losses was fully confirmed. Lehman Brothers' 10-K stated that the Company lost $5.9 billion on its mortgage-related positions during the year ending November 30, 2007.

### IV. CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of (as stated above) all those who

purchased or otherwise acquired Lehman Brothers securities between September 13, 2006 and July 17, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class is the defendant, the officers and directors of Lehman Brothers and its subsidiaries, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendant has or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impractical. Throughout the Class Period, Lehman Brothers' shares were actively traded on the NYSE. The exact number of Class members is unknown to the plaintiff at this time and can only be ascertained through appropriate discovery. Indeed, during the Class Period, Lehman Brothers had more than 530 million shares outstanding, with an average of more than 15 million shares traded per day. Record owners and other members of the Class may be identified from records maintained by Lehman Brothers or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and/or fact common to the members of the Class which predominate over questions which may affect individual Class members include:

  (a) Whether the 1934 Act was violated by defendant;

  (b) Whether defendant omitted and/or misrepresented material facts;

  (c) Whether defendant's statements omitted material facts necessary to make the statements made, in light of circumstances under which they were made, not misleading;

  (d) Whether defendant knew or recklessly disregarded that his statements were

    false and misleading;

 (e) Whether the price of Lehman Brothers securities was artificially inflated as a result of defendant's misrepresentations and/or omissions; and

 (f) Whether disclosure of defendant's wrongdoing caused Class members to suffer damages.

30. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendant's common course of wrongful conduct involving Lehman Brothers' SEC filings and defendant's other public statements concerning the CDOs, mortgage derivatives or mortgage-backed securities.

31. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff knows of no interests he has which conflict with those of the Class.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### V.   FRAUD ON THE MARKET

33. At all relevant times, the market for Lehman Brothers securities was an efficient market for the following reasons, among others:

 (a) Lehman Brothers securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient market.

  (b)  On average Lehman Brothers traded millions of shares per day during the class period.

  (c)  As a regulated issuer, Lehman Brothers filed periodic public reports with the SEC and the NYSE;

  (d)  Lehman Brothers regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major news services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and,

  (e)  Lehman Brothers was followed by securities analysts employed by many major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

34. As a result of the foregoing, the market for Lehman Brothers securities promptly digested current information regarding Lehman Brothers from all publicly available sources and reflected such information in Lehman Brothers' share price. Under these circumstances, all purchasers of Lehman Brothers securities during the Class Period suffered similar injury through their purchase of Lehman Brothers securities at artificially inflated prices, and a presumption of reliance applies.

## VI. SCIENTER

35. The defendant had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts, even though such facts were available to him. Defendant's material representations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lehman Brothers' operations and business affairs from the investing public, thereby supporting the artificially inflated price of Lehman Brothers securities. As demonstrated by Lehman Brothers' statements throughout the Class Period, if defendant did not have actual knowledge of the misrepresentations and omissions alleged, he was reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

36. In particular, defendant failed to disclose to investors that (i) for months Lehman Brothers had been engaged in the origination and trading of mortgage-related securities and derivatives to a far greater extent than had already been anticipated by investors, and (ii) hedging mechanisms employed by Lehman Brothers offered inadequate protection to its risky trading strategies.

**FIRST CLAIM FOR RELIEF**

**FOR BREACH OF FIDUCIARY DUTY OF DISCLOSURE**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. Defendant O'Meara owed a fiduciary duty to the Class, as purchasers and owners of Lehman Brothers stock.

39. Defendant, by means of his making the foregoing false and misleading statements and omissions, breached his fiduciary duty to the Class.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF § 10(b) OF THE 1934 ACT
### AND RULE 10b-5 PROMULGATED THEREUNDER
### ON BEHALF OF THE CLASS

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. During the Class Period, defendant carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and the Class; (ii) artificially inflate and maintain the market price of Lehman Brothers securities; and (iii) caused plaintiff and the Class to purchase or otherwise acquire Lehman Brothers securities at inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendant took the actions set forth herein..

42. Defendant (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and/or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers and/or acquirers of Lehman Brothers securities and which maintained artificially high market prices for Lehman Brothers securities in violation of §10(b) of the 1934 Act, 15 U.S.C. 78j(b), and rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5. Defendant is sued either as a primary participant in the wrongful and illegal conduct charged herein or as a controlling person as alleged below.

43. In addition to the duties of full disclosure imposed on defendant as a result of his making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, he had a duty to promptly disseminate truthful information that would be material to investors, in compliance with the integrated disclosure

provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. § 210.01 *et. seq.*) and S-K (17 C.F.R. § 229.01 *et seq.*) and other SEC regulations, including truthful, complete, and accurate information with respect to, *inter alia*, Lehman Brothers' exposure to losses related to mortgage-backed securities, so that the market price of Lehman Brothers securities would be based on truthful, complete and accurate information.

44. Defendant, directly and indirectly, by use of means and instrumentalities of interstate commerce of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Lehman Brothers' mortgage-backed securities operations, including its proprietary trading patterns. Defendant employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public and engaged in acts, practices, and a course of conduct as alleged herein, in an effort to assure investors of the value of Lehman Brothers securities. This included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make statements made about Lehman Brothers' operations, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers and acquirers of Lehman Brothers securities during the Class period.

45. With respect to defendant's misstatements and omissions, plaintiff relies upon the group pleading doctrine that creates the "presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information are the collective work of those individuals with direct involvement in the everyday business of the company." *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999). Thus, all of the misstatements and

omissions made by Lehman Brothers are attributable to the defendant.

46. As a result of the dissemination of the materially false and misleading information, failure to disclose material facts, as set forth herein, the market price of Lehman Brothers securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendant, or upon the integrity of the market in which the securities trade, and the truth of any representations made to appropriate agencies as to the investing public, at the times at which any statements were made, on the absence of material adverse information that was known to or recklessly disregarded by defendant but not disclosed in public statements by such defendant during the Class Period, plaintiff and the Class purchased or otherwise acquired for value Lehman Brothers securities during the Class Period at artificially high prices and were damaged thereby when the shares declined in price in reaction to the corrective disclosures.

47. At the time of such misstatements and omission, plaintiff and the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the Class and the marketplace known of the true financial condition of Lehman Brothers' mortgage-related operations which were not disclosed by defendant, plaintiff and the Class would not have purchased or otherwise acquired their Lehman Brothers securities during the Class Period, or if they had purchased or otherwise acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48. By virtue of the foregoing, defendant has violated §10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of the defendant's wrongful conduct, plaintiff and

the Class suffered damages.

## THIRD CLAIM FOR RELIEF

### CONTROL PERSON LIABILITY

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. Defendant O'Meara was Lehman Brothers' Chief Financial Officer during the Class Period.

52. The defendant acted as a controlling person of Lehman Brothers within the meaning of the 1934 Act, as alleged herein. By virtue of his executive position he had the power to influence and control and did influence and control, directly or indirectly, the statements of the corporation, including the content and dissemination of the various statements which plaintiff contend are false and misleading. The defendant was provided with or had unlimited access to copies of the corporation's internal reports, press releases, public filings, and other statements alleged by plaintiff to be misleading prior to and shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. The defendant's primary liability and controlling person liability arises from the following facts: (i) he was a high-level executive of the corporation during the Class Period and was a member of the corporation's management team; (ii) by virtue of his responsibilities and activities as a senior officer of the corporation, he was privy to and participated in the drafting, reviewing, and approving of the misleading statements, releases, reports, and other public representations of and about the corporation's business and operations, and in particular about the management and performance of its mortgage-related securities operations, and signed the corporation's public filings with the SEC, which public filings contained the materially misleading statements; (iii) he

15

knew or had access to the material adverse non-public information about the corporation's business and operations, including its mortgage backed securities operations; and (iv) he was aware of the corporation's dissemination of information to the investing public which he knew or recklessly disregarded was materially false of misleading.

54. In particular, the defendant had direct involvement in the day-to-day operations of the corporation and therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, especially by virtue of his senior position, and exercised the same.

55. As set forth above, defendant violated §10(b) of the 1934 Act and Rule 10b-5 by his acts and omissions as alleged herein. By virtue of his position as a controlling person of Lehman Brothers, the defendant is liable pursuant to §20(a) of the 1934 Act.

56. As a direct and proximate result of the defendant's conduct, plaintiff and the Class suffered damages.

## IX. JURY DEMAND

Plaintiff hereby demand a trial by jury as to all issues.

WHEREFORE, plaintiff respectfully requests that the Court enter judgment in favor of the plaintiff and the Class as follows:

A. Determining that the instant action is a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

B. Determining that plaintiff is an appropriate derivative representative and may proceed with this derivative litigation

C. Awarding compensatory damages against defendant; awarding interest on the

foregoing amounts as allowed by law;

D. Awarding attorneys' fees and the costs and disbursements of this action; and

E. Granting such other and further relief as the court may deem just and proper.

                Respectfully submitted,

Dated: February 22, 2008        **CLAUDE A. REESE**

By: /s/ Joel L. Lipman
Joel L. Lipman
O'Rourke Katten & Moody
161 North Clark Street, Suite 2230
Chicago, IL 60601
Telephone:  (312) 849-2020
Facsimile:  (312) 849-2021

Attorneys for Plaintiff

17

## SWORN CERTIFICATION OF PLAINTIFF CLAUDE A. REESE
## LEHMAN BROTHERS HOLDINGS INC. SECURITIES LITIGATION

I, Claude A. Reese, certify that:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase LEHMAN BROTHERS HOLDINGS INC., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in LEHMAN BROTHERS HOLDINGS INC. during the Class Period set forth in the Complaint are as follows:

I bought 16 shares on 07/13/2007 at $73.53 per share

5. During the past three years I have sought to serve as a representative party on behalf of a class under this title in the following actions:

*Claude A. Reese v. Indymac Financial Inc., et al.*, No. 2:07-cv-01635-GW-VBK (C.D. Cal.)

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 02/20/2008

_____
(Please Sign Your Name Above)
CLAUDE A. REESE